When Bajena Cardenas decided whether a deportation warrant was testimonial, it admitted that the Supreme Court had never defined what that term meant. But now in Melendez-Diaz, the Supreme Court has indicated that the core class of testimonial statements is based not on a subjective standard as Bajena applied, but on an objective one. Now under Miller, Bajena's reasoning has been undercut, and this court should not follow it, and instead hold that a warrant is testimonial, and therefore its admission in this case was error. Counsel, just going to your first principle's argument on that, why is a warrant prepared before there's any charge? You know, why is that testimonial? It's testimonial, your honor, because it falls squarely within the definition adopted in Melendez-Diaz, which goes back to Crawford, and I quoted, this is from page 2532 of Melendez-Diaz. Statements made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use in a later trial. Now that describes precisely a warrant of deportation. There's no question these days in anybody's mind that a warrant of deportation when it's prepared is reasonably likely to be available for use in a later trial. That squarely falls within Melendez-Diaz's definition. That is, it's an objective standard. We don't go to what did the author of the document intend, did the author intend it to be used in litigation. We look to what's reasonably foreseeable to an objective witness, and I think the circumstances here of the warrant itself, of the very fact that every federal courtroom in this country must have admitted a warrant of deportation in a 1326 case. So Melendez-Diaz also says, is looking at the business and public records and saying they qualify under an exception because having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, therefore they're not testimonial. So I guess a question is, is this something that is created for the purpose of proving something at trial or is it something that's created for the administration of the entity's affairs? And how do we make that determination? I think it is true that a document that is prepared for the purpose of litigation is very clearly, as the court said in Melendez-Diaz, we have no doubt that this falls into the core testimonial category. It's true that where a document is prepared with the subjective intent that it be used in an actual trial, that that does qualify. But as the Supreme Court also said in Melendez-Diaz, we must not confuse the core with the limits of the definition. They specifically said that we should not consider the fact that a certain document qualifies as the core to define the outer limits of what is testimonial. And it's true that a document specifically subjectively prepared for a trial is a good example of a testimonial document. But that's not the outer bounds. Mr. Fyfe, Mr. Fyfe. But of course we have this prior precedent, right? Is that Bahena? Bahena Cardenas, that's right, Your Honor. Okay. So we're really bound by that unless you can prevail saying that Melendez is irreconcilable with Bahena. Correct. Which you've argued. You've argued, but with the language that Judge Aikuda mentioned, it's not clear to me it's totally irreconcilable. So you might want to dwell on that, on your side of that argument. All right, Your Honor. I think that, as I said, Melendez-Diaz said there's a difference. And actually the Supreme Court stressed the same thing in Davis v. Washington, that courts have been taking a too narrow view. And I think the fact of the reversal in Norwood is an indication that this court's been taking too narrow, restricted view. That the case has been, the Supreme Court has been considering the cases stepwise in increments, looking at one type of document, looking at another type of document. The fact that they find a certain type of document, courts have been trying to read the tea leaves and saying, oh, then that's testimonial, oh, that's testimonial. But the Supreme Court stressed in Davis and in Melendez-Diaz that, no, we've been talking about core examples. These are indeed examples of testimonial. But the definition of testimonial is broader, which includes statements that are made with a reasonable expectation, an objective witness would reasonably believe. But, you know, that must cover an awful lot of business records that I'm not sure any of us would say were testimonial. I suppose it depends how much business a business record is for and how incidental or occasional a use might be. I mean, all kinds of business records might somehow get into a tax litigation, but they're prepared for the business. They can come in. I agree, Your Honor, that there is obviously a cutoff point. And that's what the courts will determine when they look at it and see, is this a, would an objective witness reasonably expect this to be used in a trial? But when we're talking about a warrant of deportation, there is no question that those are anticipated to be used in a criminal trial. That's not only just by common sense and by experience, but the testimony of Agent Holmes, a trial here, specifically said that we prepare this so we can identify the identifying information in case somebody returns to the country. Well, in case they return, that means they violated 1326. And the ICE's own practice manuals, field manuals, repeatedly refer to these documents as being available for future prosecution. And, in fact, in the administrative removal manual at Section 14-1, the field officers are advised to take special care that these documents are prepared to withstand an attack during a criminal prosecution. So it's clear that every ICE officer, every ICE deportation officer, knows that these warrants are potentially used in a future criminal case. And I don't think we have to limit it to ICE officers. I think any objective witness, any layperson who's informed of the specific facts of what a warrant of deportation contains and what the elements of a 1326 are will readily say, yeah, I can see how that might be used in a trial of that criminal case. And it makes sense because there's that element, three, there's three sections to the warrant of deportation. One, a validation that there is an indication that there is a valid order of deportation from an administrative officer or an IJ. Second part is the identifying information that links it to a particular defendant. And the third part, a testimonial, an attestation by a percipient witness. But what is it that makes it not a business record? Because obviously the Supreme Court has said business records may not be testimonial, not testimonial. So what is it? So in order for Melendez-Diaz to be irreconcilable with our prior case, we have to say here's the rule that makes these warrants of deportation not business records. And what would you say that is? Well, Your Honor, I think that the problem is that Melendez-Diaz has indicated clearly that the status as a business record does not determine the issue of what is testimonial. Business records may be testimonial. Business records may not be testimonial. The business record exception is a hearsay exception. It is not an exception to confrontation. And Melendez-Diaz was at pains, they went on for quite a long time in the decision, explaining the government misunderstands business records are not an exception to confrontation. They're a hearsay exception. So some are and some aren't. And, in fact, they pointed to the Palmer case where they said, look, here's an example of a business record that's not testimonial because it was or that was testimonial, would have been, because it was prepared in anticipation of litigation. So it's anticipation of litigation that tells? No, no. You're not saying that. Excuse me, Your Honor. That is a clear example.  But as Melendez-Diaz repeatedly, repeatedly points out, the definition, there's three definitions under Crawford, and they say all three of these, cumulatively, can be used to define testimonial. The third one is statements made under reasonable circumstances, under circumstances that would lead an objective witness to believe, reasonably believe, it could be used, could be used, not that it will be used. In a business, in making employment decisions, the managers are advised to document any criticism of employees, and that will make a case for dismissal and, of course, will be used when the employee who's discharged sues, if that should happen. Now, does that make the records of putting down the criticisms or the information about the employees in the employee's file testimonial statements, in your view, under your view of Melendez? I can't say. But I would say that it potentially makes them a potentially are, simply because it's a normal, routine business record doesn't preclude it. I think that this Court should follow the same procedure, which the Supreme Court follows, is let's not make sweeping definitions now. I mean, they started that with Crawford, saying, we're not going to define sweeping definitions. We're going to consider this on a case-by-case basis. And they've done that in Davis. They've done that in Melendez-Diaz. They said, let's look at this type of document. Are police interrogations testimonial? Yes. When they're done with a certain purpose. Are chemical analysis certificates testimonial? Yes. And they then emphasized, let's look at these particular cases. But as they said in Melendez-Diaz, the particular cases that we've concerned, that we've looked at, do not define the outer scope. They're just the cases that have come to us at this point to help you illustrate. So in your case, Judge Ikuda, about that business record, I don't know. I think, yes, a defense attorney could raise an objection saying, this is testimonial. It would then be up to the proponent of the evidence to show that it is not. But if we had a prior decision that said it was not testimonial, how would that be irreconcilable with Melendez-Diaz? That's sort of the situation we're in right now. Because when Bahena Cardenas – It happened on a case-by-case basis. Doesn't it just have to be decided on that case? And there's no intrinsic irreconcilable difference. I don't think that's true, Your Honor, because Bahena Cardenas was decided at a time when nobody had any idea what the scope of Crawford was. In fact, what Bahena Cardenas says, however, the Supreme Court declined to define what constitutes testimonial evidence. Well, Bahena Cardenas admitted that we have no idea what testimonial evidence is. Let's take a shot at it. I mean, with all respect to the panel and Bahena Cardenas, they were in the dark, and they had to take a stab at what they thought might be testimonial. And what they picked was a subjective test. They said, what was the intention of the person, of the author,  Did they intend it, anticipate it to be used in litigation? But now, years later, Melendez-Diaz said, Well, no, that's not correct, because within the core definition of testimonial documents, it includes this objective test. Would an objective witness reasonably believe that this would be used? That is the test. It's an objective test, not a subjective one, is Bahena. Bahena's completely, not surprisingly, This would be used, implying more likely than not. The reason I ask is there are probably a lot more warrants written that are used in litigation. That's true, Your Honor, and I have to point out that I cited a California case in my brief, People v. Dungo. That case has now been granted review by the California Supreme Court, so it's no longer authority. But its facts are interesting, and I think informative here, because it related to a coroner's autopsy report, where the court of appeal found that this was testimonial. Now, the government code in California requires, under certain circumstances, for coroners or medical examiners to do an autopsy and prepare a report. Now, obviously, as you point out, Judge Kennedy, there's a lot of autopsy reports that were produced, because anyone who dies, for instance, who's not under the care of a physician is going to have an autopsy. That doesn't mean that there's a criminal case that's coming up. So a lot of autopsy reports were prepared that never worked their way into a criminal case. But the court of appeal there said, Well, it's pretty foreseeable. A reasonable person could imagine that an autopsy report might show up in a homicide case. And it was especially so in the case in Dungo, because the medical examiner was asked to prepare the report by the police. So that added to the fact that this was pretty foreseeable. There was both the subjective and the objective evidence of it. I think the same is true here of the warrant of deportation. There's not only subjective evidence. I think that there can't be a deportation enforcement officer who signs a warrant who isn't aware, if they've read their manuals, they're aware that this document will be used, very likely be used in a criminal case if this person returns. Do you want to save time for rebuttal? Yes, thank you, Your Honor. Your Honors, may it please the Court. Matthew Gardner for the United States. It's the government's position that Melendez-Diaz has not changed the law with respect to whether or not warrants of deportation are admissible in a 1326 trial. The warrants of deportation are non-testimonial and they were properly admitted in this case. I think Your Honor set out the test in Melendez-Diaz correctly, that business records created for the administration of an entity's affairs are not calculated and which are not calculated for use in a court, are non-testimonial. Are warrants of deportation used for anything other than for later production at a trial? Absolutely. And their primary use would be for later immigration proceedings. The vast majority of people, I would assume that the vast majority of people who are deported don't come back into the United States. But should they reapply for admission or should they come back into the United States illegally, the Immigration Service, the Department of Homeland Security, would go to their AFILE and look to find those warrants of deportation. That is their primary use, is for immigration proceedings and to otherwise keep track of where they are moving, where people are moving in and out of the country. So that's the primary purpose, and I can imagine other purposes as well, but that would be the primary purpose. And it's exactly what Melendez-Diaz is discussing. It's created for the administration of an entity, in this case the Department of Homeland Security, to keep track of its affairs. And so it's... Mr. Gardner, it's Judge Gould with a question. So at least it seems to me its primary purpose is not for litigation if a primary purpose test applies. But how do you answer Mr. Fife's argument that Melendez has language in it that suggests you look to whether it's reasonably foreseeable it would be used in litigation? I think Your Honor has it right, that the primary purpose of a warrant of deportation is not to be used in litigation. And I think that's the deciding factor here. Is it possible that someone can look at this warrant of deportation and foresee a 1326 prosecution? Of course. The same goes with a birth certificate, for example, which also foreseeably could be used in a 1326 trial to determine alienage. But there's no question that birth certificates would meet the Melendez-Diaz exception, that they are not created primarily for use in a court. And I think the difference here is that the definition Mr. Fife is proposing would say that any document that you could possibly imagine being used in a criminal case, therefore, can never be admitted and would always be considered testimonial. I think that's, at least we're approaching that type of a standard if the court were to follow Mr. Fife's definition. Did the Bahena panel, did they adopt a primary purpose test? Do we have any circuit? Is there any circuit that has adopted that as a test? I don't know if the specific primary purpose test has been adopted. I can say that my colleague, Mr. Reiki, who will be arguing before Your Honors later today, has filed a 28-J letter in which the Fourth and Eleventh Circuits have both said that warrants of deportation under Melendez-Diaz are not testimonial. I don't know specifically if they adopted a primary purpose test, though. And I think here the contrast with the certificate of nonexistence of record is important. The government is conceding that the certificate of nonexistence of record that was used in this case was used in error. We didn't have the guidance from Melendez-Diaz at the time. It was standard practice throughout the country to use those, so that's why it was used at the time. But the difference, and I think looking at specifically what happened in this case, helps understand the difference between these two types of documents. In this case, about a week or so before trial, I approached Agent Holmes, who is the AFOL custodian, and among our other preparations I asked him to make sure that a certificate of nonexistence of record would be prepared so that we could use it the following week or so in trial, and that's what he did. This was something that was clearly prepared for trial, and now with the definition from Melendez-Diaz clearly falls within that. That was calculated for use in a court. In contrast, warrants of deportation are created under vastly different circumstances. I've spoken with probably a couple dozen IEAs, the immigration enforcement agents, who actually do the deportations. I believe Mr. Orozco, in his last deportation, was deported through Bakersfield, and I've spoken with IEAs from Bakersfield. Their process is that they will get 20 or 30 or 40 or 60 people who have been ordered deported. They'll put them on a bus, they'll drive down to San Ysidro and San Diego, one of the ports of entry, and they'll start to prepare the document, usually up in Bakersfield, to make sure they have all the right people on the bus. They come down to the border, make contact with Mexican authorities on the other side, and make sure that the fingerprint and the photograph are there, and then they make sure that the right and correct people on the bus are actually deported. It's an administrative function. It's done routinely, and it's done daily. When I speak with immigration enforcement agents about the process of creating this document, they tell me one of the first things I always ask, kind of in a half-joking way, is do you remember the defendant in this case, Mr. Orozco, whoever it might be? And they laugh because they don't remember this person because they've done this hundreds, at the minimum, usually thousands and thousands of times, 20, 40, 60 times a day. So that's the process under which warrants of deportation are created. Vastly different from the process by which the Certificate of Non-Existence record was created. Is there anywhere any record you imagine how many warrants are produced in a year? I don't know that offhand. I know, again, from my own experience, but I think this would bear out. When I speak to the immigration enforcement agents, it's either their first time testifying or maybe one out of the other thousands, one or two or so. That would be very unusual for someone to have testified in a 1326 trial more often than that. And I can also say, looking at Mr. Orozco's A file, it's also very instructive. From 1965 or so through 2008, he was deported on, I believe it was 10 times. And so his A file contains, I think it contained one warrant of deportation for every time he was removed. At trial here, the government only used one. I only offered one of those warrants of deportation. So this is someone with a serious criminal history, or at least some of those warrants of deportation, who is more likely than others, if he were to return, to be subject to a 1326 trial. And even then, we're talking about 10 percent at best of the warrants of deportation in his own A file were used in a subsequent criminal litigation. These are not made, not calculated for use in a court. This is a document that people are performing an administrative function. It's much more like the birth certificate that was spoken about in Bajena Cardenas, and I think that logic still applies. Of course, it's foreseeable. Is it possible that it could be used later on in a criminal case? Yes. But is it calculated for use in a court? No, definitely not. Well, and I guess the question is, when we look at two phrases in Melinda Diaz, one, of course, talks about something prepared for court, and the other one talks about something that a reasonable person would expect to be used in court. And I guess, I don't know whether you're saying that suggests if it's mostly prepared for court, or statistically, or something. I don't know. There, and I think it'll, I actually think it might depend, in some instances, turn on the type of document. And I think in this case, what we're looking at with the warrant of deportation, I think what the Supreme Court, Melinda Diaz, in speaking about a reasonable person foreclosed, was calling the immigration enforcement agent to ask about their subjective intent when they deported the 12th person. I think that's clearly out. And I think... Well, I suppose perhaps your argument is, as you've already made, is that a reasonable person looking at any given warrant when it is being filled out... That's correct. ...would not, there'd be a fairly small chance that it would be used in litigation. A reasonable person watching one of those warrants filled out, understanding that process, would not make the determination that that warrant has been calculated for use in a court. No, not calculated. Likely to be used. I think Melinda Diaz may have used both languages, but I'll defer to the court. I mean, calculated puts intent back into it, it seems to me. That puts it back into the court, if this is... Well, I think the intent of the person actually filling out the document is not the controlling factor. But I think it actually can be... Looking at the circumstances in which it's formed could be... I don't think this is something where it's a strict objective test necessarily. I don't know that we need to reach that for the warrant of deportation. But I'm thinking about your Honor's question to Mr. Fyfe about autopsy reports. And I can imagine a wide variety of different things that might constitute a death certificate or an autopsy report. On the one hand would be a very pro forma certificate of death in which the objective intent of everyone is that this has nothing to do with the criminal case down the line, all the way up until an autopsy report is prepared at the direction of a prosecutor in a case in which there's likely been a homicide and the idea is that this report, or at least those findings, are going to be used. And I think that subjective intent... And it doesn't have to necessarily be the subjective intent of the person filling it out. I don't think we need to have a mini hearing with the declarants pre-trial to determine their subjective intent. That part's foreclosed. It's the objective intent. It's an objectively reasonable person looking at the process of filling out these documents that would control. And so with the range of options there with the certificates of death all the way through an autopsy report, these might all be classified as roughly the same type of document. I can imagine some that would come in very easily under Melendez-Diaz, others that might have more of an issue and might be considered more testimonial. Does the Court have other questions on that issue? Or would the Court like me to... I could address briefly the harmless error analysis with respect to the CNR if there aren't any other questions on that. Go with that. As Your Honor stated at the top of the day, this is a crisp harmless and error analysis. The government concedes that the certificate of non-existence of record was brought in in error, but I think there is overwhelming evidence that Mr. Orozco did not apply for permission to enter the United States and not have permission to be here. His, and I'll just briefly go through that, the evidence that was put on by the government in its case in chief. First was Mr. Orozco's field admission when he was brought into the United States. He was encountered in the field. Agent Thompson asked him, Do you have any right to be here? Something along those lines. And he said, No, I don't have any papers to be here. So that would be his first admission. His second admission would be after his arrest, which I've included as supplemental extra to the record one, his post-arrest statement in which he went through and said that, No, he doesn't have any right to be here in the United States. Also there was the review of his A file as well as the claims and CIS databases that Agent Holmes did. He went through those databases as well as that A file, said that if he did have permission or if he'd applied for permission, it would be in one of those two places, and it wasn't. And then there's also the circumstances of Mr. Orozco's arrest in this case. I'm going to go through all the details, but he was arrested in a very desolate place. It was very inhospitable. Agent Thompson describes it in fairly significant detail. If he felt there was any chance that he had permission to enter the United States, he would have gone to the Andrade Port of Entry instead of going three miles later and crawling through the holes and so forth that were described, the holes in the brush that were described by Agent Thompson. Also the issue of whether or not Mr. Orozco had permission to come into the United States simply wasn't something that was highlighted at all at trial. It was a very contested trial, but not on this issue at all. It was never really contested and just not an issue at all. So for all those reasons, I think this clearly was Holmes' error in this case. With that, I'm prepared to submit unless the Court has any other questions. No, thank you. I have none. No questions. Thank you. I don't know if I can address at lightning speed just three points. One, Melendez-Diaz acknowledged that it's a really fact-dependent inquiry whether something is testimonial because they acknowledge that a record custodian's document certification, even though that's obviously prepared for use in a trial, is not testimonial. So even something that is produced with the intention that it's going to be used in a trial doesn't necessarily become testimonial. It really depends on the facts, and you have to look at it. You can't make these sweeping decisions, as the Supreme Court pointed out. As to the primary purpose, I don't believe there is a primary purpose requirement. That's one example of something that's a good case of testimonial, but that's not the definition. There's not one reference to the term primary purpose in Melendez-Diaz, except in Justice Kennedy's dissent one time. In Davis, I can cite five different instances where Davis, when they talked about primary purpose, they always joined it with the objective circumstances. Do the objective circumstances indicate the primary purpose? So, again, it's the objective test. It's the same test as Melendez-Diaz. And finally, the deportation enforcement officer signs the deportation warrant, saying witness by, and is testifying to eyewitness testimony. What is more prototypically testimonial than eyewitness testimony? I can't think of a single thing, Your Honor. Thank you. Thank you. In the case of the United States v. Orozco-Acostas, submitted?
judges: Canby, Gould, Ikuta